[No. B223625. Second Dist., Div. Three. Sept. 20, 2010.]

JERRY DARNELL ANTHONY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Robert S. Gerstein; and Mark P. Brandt for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Brentford Ferreira and Beth L. Widmark, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**KLEIN, P. J.**—Jerry Darnell Anthony has filed a petition for writ of mandate seeking an order directing the trial court to dismiss a pending charge of

premeditated attempted murder (Pen. Code, §§ 664, subd. (a), 187).[1] He contends the charge is barred by the six-year statute of limitations period prescribed by section 800. We issued an order to show cause and now deny Anthony's petition. For purposes of determining the applicable limitation of time under section 805, subdivision (a), the life term imposed by section 664, subdivision (a), for premeditated attempted murder constitutes an alternative penalty provision, not an enhancement, and therefore Anthony's prosecution for that crime "may be commenced at any time" under section 799.

## PROCEDURAL BACKGROUND

By an amended information filed on May 19, 2008, Anthony was charged with the following offenses: attempting to dissuade a witness, in violation of section 136.1, subdivision (a)(2) (count 1); felon in possession of a firearm, in violation of section 12022 (count 2); street terrorism, in violation of section 186.22, subdivision (a) (count 3); attempted willful, deliberate, and premeditated murder (hereafter, premeditated attempted murder), in violation of sections 664, subdivision (a), 187 (count 4); and aggravated mayhem, in violation of section 205 (count 7). Both the premeditated attempted murder and the aggravated mayhem were alleged to have been committed against the same victim on June 13, 1999. The other offenses were alleged to have been committed in 2006.

After the trial court denied Anthony's motion to dismiss the premeditated attempted murder charge on statute of limitations grounds, the parties agreed to sever counts 1, 2 and 3, and proceed to trial on counts 4 and 7.

On August 1, 2008, the jury deadlocked and a mistrial was declared.

On October 2, 2009, the trial court again denied Anthony's request to dismiss the premeditated attempted murder charge on statute of limitations grounds. This petition for writ of mandate followed. We issued an order to show cause and now deny Anthony's requested writ relief.[2]

## CONTENTION

Anthony contends the premeditated attempted murder charge must be dismissed because it was filed after the six-year statute of limitations period set forth in section 800.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] A violation of the statute of limitations deprives the court of jurisdiction and may be raised at any time. (*People v. Williams* (1999) 21 Cal.4th 335, 339–340 [87 Cal.Rptr.2d 412, 981 P.2d 42].) Regardless of the viability of the premeditated attempted murder charge, Anthony would still face prosecution for aggravated mayhem because the punishment for that crime is life with the possibility of parole. (§ 205.)

## DISCUSSION

1. *Statutory framework.*

Resolution of this issue depends on the proper interplay of the following four statutes.

Section 664 provides, in pertinent part: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts, as follows: [¶] (a) If the crime attempted is punishable by imprisonment in the state prison, the person guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted. However, *if the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole.* If the crime attempted is any other one in which the maximum sentence is life imprisonment or death, the person guilty of the attempt shall be punished by imprisonment in the state prison for five, seven, or nine years." (Italics added.)

The statute of limitations provisions directly at issue in this case are set forth in sections 799, 800 and 805.

Section 800 provides: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense."

Section 799 provides, in pertinent part: "Prosecution for an offense punishable by . . . imprisonment in the state prison for life . . . may be commenced at any time."

Section 805 provides, in pertinent part: "For the purpose of determining the applicable limitation of time pursuant to this chapter: [¶] (a) An offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense."

■ According to this statutory scheme, the statute of limitations for an attempted murder that is *not* premeditated would be the six-year period specified by section 800 because the maximum penalty for any murder,

including second degree murder, is at least a life sentence.[3] Anthony contends the trial court should have granted his motion to dismiss count 4 because the proper statute of limitations for premeditated attempted murder is the six-year period specified by section 800. However, as we will explain, because the applicable limitation of time for premeditated attempted murder is governed by section 799, a prosecution for this crime may be commenced at any time.

2. People v. Bright: *the proper characterization of premeditated attempted murder.*

■ The parties correctly acknowledge that in *People v. Bright* (1996) 12 Cal.4th 652 [49 Cal.Rptr.2d 732, 909 P.2d 1354], disapproved on another ground in *People v. Seel* (2004) 34 Cal.4th 535, 550 [21 Cal.Rptr.3d 179, 100 P.3d 870], the Supreme Court concluded "the provision in section 664, subdivision (a), imposing a greater punishment for an attempt to commit a murder that is 'willful, deliberate, and premeditated' does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment (a greater base term) for the offense of attempted murder." (*People v. Bright, supra*, at pp. 656–657.)

The issue in *Bright* was the double jeopardy effect of a jury convicting the defendant of attempted murder, but failing to reach a verdict on the premeditation allegation. As *Bright* explained: "Under these general [double jeopardy] principles, if the phrase 'willful, deliberate, and premeditated murder' in section 664, subdivision (a), establishes a greater degree of the offense of attempted murder, a jury verdict convicting a defendant of the lesser degree of attempted murder would constitute an implied acquittal of the greater degree. The prohibition against double jeopardy therefore would bar retrial of the greater degree of attempted willful, deliberate, and premeditated murder. If, on the other hand, this provision constitutes a penalty provision related to the single offense of attempted murder, a conviction of attempted murder would not constitute an acquittal of (or otherwise bar retrial of) the penalty allegation that the attempted murder was willful, deliberate, and premeditated." (*People v. Bright, supra*, 12 Cal.4th at p. 662.)

Recounting the legislative history of the attempt statute, *Bright* noted that before section 664 was amended in 1986, the statute "prescribed the identical

---

[3] Section 190, subdivision (a), provides, in pertinent part: "Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or imprisonment in the state prison for a term of 25 years to life. . . . [¶] Except as provided in subdivision (b), (c), or (d), every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life." Subdivisions (b), (c) and (d) prescribe longer life terms for second degree murder committed in aggravated circumstances.

punishment for attempted murder regardless whether the murder attempted was of the first or second degree." (*People v. Bright, supra*, 12 Cal.4th at p. 663.) When section 664 was amended in 1978, that punishment was five, seven, or nine years. "Thus . . . at the time of the 1986 amendment to section 664, it was recognized generally that the crime of attempted murder was not divided into degrees." (*People v. Bright, supra*, at p. 665.) Then "[i]n 1986, the Legislature added to section 664, subdivision (a), the provision prescribing life imprisonment with the possibility of parole as the punishment where the 'crime attempted is willful, deliberate, and premeditated murder, within the meaning of section 189 . . . .' " (*Ibid.*, fn. omitted.)

The issue for *Bright* was "whether the 1986 amendment should be interpreted as changing existing law so as to divide the crime of attempted murder into separate degrees—an attempt to commit willful, deliberate, and premeditated murder ('first degree attempted murder') and all other attempts to commit murder ('second degree attempted murder')—or, instead, as establishing a penalty provision that increases the punishment if the trier of fact, after finding the defendant guilty of the crime of attempted murder, also finds that the murder attempted was willful, deliberate, and premeditated." (*People v. Bright, supra*, 12 Cal.4th at pp. 665–666, fn. omitted.)

*Bright* reasoned that, "[a]lthough . . . the language employed in the segment of section 664 at issue in this case corresponds to the language typically employed in 'sentence enhancement' provisions under the Determinate Sentencing Act of 1976, *strictly speaking this portion of section 664 does not constitute an 'enhancement'* within the meaning of rule 405(c) of the California Rules of Court, which defines 'enhancement' as 'an additional term of imprisonment added to the base term,' *because this statutory provision establishes an increased base term for the crime of attempted murder upon a finding of specified circumstances.*" (*People v. Bright, supra*, 12 Cal.4th at p. 656, fn. 2, italics added.) Thus, *Bright* found "no basis for defendant's conclusion that, in amending the statute to prescribe a life sentence for attempted murder that is willful, deliberate, and premeditated, the Legislature sought to carve out a separate, higher degree of the crime of attempted murder." (*People v. Bright, supra*, 12 Cal.4th at p. 668.)[4]

■ Thus, it is clear premeditated attempted murder is not a separate offense from attempted murder. The crucial question, however, is what effect this conclusion has on determining the applicable statute of limitations for prosecuting this crime.

---

[4] *Bright*'s characterization of the 1986 amendment as creating a penalty provision was subsequently affirmed in *People v. Seel, supra*, 34 Cal.4th at page 541, which disapproved *People v. Bright, supra*, 12 Cal.4th 652 only to the extent its double jeopardy analysis had been overruled by the intervening case of *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348].

### 3. *Analysis of the statute of limitations scheme.*

#### a. *People v. Turner.*

Based on the decision in *People v. Turner* (2005) 134 Cal.App.4th 1591 [36 Cal.Rptr.3d 888], Anthony argues the applicable limitation period is necessarily the six-year limit in section 800. *Turner* faced the question whether a prosecution for robbery (§ 211) could be commenced "at any time," under section 799, where the defendant also faced a life sentence under the "Three Strikes" law. *Turner* framed the issue this way: "The question whether an offense that normally is subject to the [three-year] limitation period of section 801[5] instead may be prosecuted 'at any time,' pursuant to section 799, when allegations of a defendant's recidivist status expose the defendant to an indeterminate life term under the Three Strikes law, is an issue of first impression. The issue is one of statutory interpretation, and turns on the meaning, in section 799, of 'an offense punishable by . . . imprisonment in the state prison for life,' and in section 805 of 'the maximum punishment prescribed by statute for the offense.' Specifically, the issue is whether the 'offense' referred to must *itself* be punishable by life imprisonment, or whether the Legislature intended to include any offense which may result in a life sentence based upon facts other than the commission of the offense itself. We shall conclude that the former interpretation is correct, and therefore shall reverse defendant's conviction for robbery." (*People v. Turner, supra,* 134 Cal.App.4th at p. 1596.)

Examining the legislative history of the "current scheme of criminal statutes of limitation [as] set forth in sections 799 through 805," *Turner* observed: "In 1981, in recognition of the fact 'that piecemeal amendment over the years had produced a scheme that was confusing, inconsistent, and lacking in cohesive rationale,' the Legislature referred the matter to the Law Revision Commission for comprehensive review. [Citations.] In 1984, the Legislature overhauled the entire scheme. (Stats. 1984, ch. 1270, §§ 1–2, pp. 4335–4337.) The revised scheme reflected the primary recommendation of the Law Revision Commission that the length of a 'limitations statute should generally be based on the seriousness of the crime.' (17 Cal. L. Revision Com. Rep. (1984) p. 313.) The use of seriousness of the crime as the primary factor in determining the length of the applicable statute of limitations was designed to strike the right balance between the societal interest in pursuing and punishing those who commit serious crimes, and the importance of barring stale claims. (*Id.*, p. 314.) It also served the procedural need to 'provid[e] predictability' and promote 'uniformity of treatment for

---

[5] Section 801 provides: "Except as provided in Sections 799 and 800, prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense."

perpetrators and victims of all serious crimes.' (*Ibid.*) The commission suggested that the seriousness of an offense could easily be determined in the first instance by the classification of the crime as a felony rather than a misdemeanor. Within the class of felonies, '*a long term of imprisonment is a determination that it is one of the more serious felonies; and imposition of the death penalty or life in prison is a determination that society views the crime as the most serious.*' " (*People v. Turner, supra,* 134 Cal.App.4th at pp. 1594–1595, italics added.)

*Turner* then reasoned as follows:

"Both sections 799 and 805 refer only to prosecution for an '*offense,*' and punishment prescribed by 'statute for the *offense,*' not to prosecution and punishment that applies to a particular *offender,* and which is based upon facts other than the commission of the offense for which he or she is being prosecuted. The Penal Code defines an 'offense' as 'an *act* committed or omitted in violation of a law forbidding or commanding it.' (§ 15, italics added.) In the context of selecting the applicable statute of limitations for a prosecution, the 'act' or 'offense' must refer to the current felony for which the defendant is to be, or is being, prosecuted, not the facts of prior convictions, because the prior convictions are based on records of prosecutions that have already been brought. The maximum punishment prescribed by 'statute for the *offense*' (§ 805, subd. (a), italics added) therefore logically refers to the maximum punishment for the current offense for which the defendant is being prosecuted, and to which he may assert the bar of the statute of limitations.

"The punishment of an indeterminate life term under the Three Strikes law, by contrast, is not a punishment specified by statute for an 'offense,' i.e., the current act for which the defendant is to be prosecuted. It is an alternative sentence imposed upon those who commit a current felony offense, *and* who are recidivist offenders. . . . The indeterminate life term to which the offender may be subject, under the Three Strikes law, is . . . an alternative punishment that is imposed *based upon the fact of the defendant's recidivism,* and it is imposed upon conviction of 'a felony' without regard to the seriousness of the current felony offense, if the defendant has two or more 'serious' or violent felony convictions. . . . For these reasons the indeterminate life term under the Three Strikes law is not, within the meaning of section 805, 'the maximum punishment prescribed by statute *for the offense* [italics added].' " (*People v. Turner, supra,* 134 Cal.App.4th at pp. 1597–1598, citations omitted.)

In reaching this conclusion, *Turner* rejected the Attorney General's reliance on "the last sentence of subdivision (a) of section 805, which states: 'Any

enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense.' The Attorney General reasons that since the punishment under the Three Strikes law is not an *enhancement*, a point that defendant readily concedes, then the life term that may be imposed pursuant to it must be deemed the 'maximum punishment prescribed by statute for [the] offense.' All the last sentence of subdivision (a) of section 805 establishes, however, is that enhancements are *not* to be included in the determination of the maximum punishment prescribed by statute for the offense. Since the life term imposed under the Three Strikes law is not an enhancement, the last sentence of subdivision (a) of section 805 does not answer, and indeed begs the question, whether the alternate life sentence imposed under the Three Strikes law is a punishment prescribed by 'statute *for the offense.*' For the reasons we have stated, it is not. Instead, it is an alternate sentencing scheme that applies and imposes punishment based upon the fact of defendant's recidivism. If anything, the direction in section 805 to disregard any enhancements in determining the maximum punishment prescribed for an offense clarifies that the Legislature intended the relevant penalty to be the punishment imposed for commission of the crime itself, not additional or alternative penalties imposed based upon other facts or circumstances such as recidivism. This approach ensures that the selection of the applicable statute of limitations corresponds to the seriousness of the current offense, and that section 799 applies only to the most serious offenses punishable by death or life in prison. (See also Cal. Law Revision Com. com., 50 West's Ann. Pen. Code (1984 ed.) foll. § 799, pp. 191–192 ['A crime punishable by death or life imprisonment . . . is a crime for which the maximum penalty that may be imposed is death or life imprisonment (with or without parole), disregarding enhancement of the penalty in the case of an habitual offender'].) Regardless of whether the punishment imposed under the Three Strikes law is deemed an enhancement or an alternate sentencing scheme, for the purpose of selecting the applicable statute of limitations, the relevant penalty is that prescribed by statute for commission of the offense itself, not penalties that may be imposed based upon other facts such as the defendant's recidivism." (*People v. Turner, supra,* 134 Cal.App.4th at pp. 1599–1600, fn. omitted.)

In the case at bar, Anthony's argument is that *Turner* stands for the broad proposition that, when section 805 says "Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense," this excludes both true enhancements and such alternative penalty provisions as the premeditated attempted murder allegation in section 664, subdivision (a).

### b. McSherry *and* Johnson.

Subsequent case law, however, has sidestepped *Turner*'s broad language and tended to limit that decision to its facts. We ourselves did so in *People v. McSherry* (2006) 143 Cal.App.4th 598 [49 Cal.Rptr.3d 389], where the defendant had been convicted of attempted child molesting with a prior conviction for a lewd act on a child under the age of 14. As we explained, "The offense of annoying or molesting a child under the age of 18 years generally is a misdemeanor that is punishable by a maximum term of one year in the county jail. (§ 647.6, subd. (a).) Where, as here, the defendant has a prior conviction of a lewd act in violation of section 288, the offense is a felony punishable by two, four or six years in state prison. (§ 647.6, subd. (c)(2).)"[6] (143 Cal.App.4th at pp. 601–602.)

Citing *Turner*, the defendant in *McSherry* argued the conduct underlying his conviction was a misdemeanor violation of section 647.6, subdivision (a), and therefore the applicable statute of limitations should be the one-year misdemeanor period governed by section 802. We disagreed, holding the proper limitation of time for attempted child molesting with a prior lewd act (§§ 664, 647.6, subd. (c)(2)) was the three-year period for felonies (§ 801) because the prior conviction allegation turned the offense from a misdemeanor into a felony.

We pointed out that, "[i]n a case involving a violation of former section 647a with a prior conviction of a lewd act, which is the precursor of 647.6, subdivision (c)(2), *People v. San Nicolas* (1986) 185 Cal.App.3d 403 [229 Cal.Rptr. 650], held the statute of limitations period . . . varied according to the criminal history of the offender. Because the defendant in *San Nicolas* had a prior conviction of a violation of section 288, he was subject to imprisonment in the state prison. [Citation.] Accordingly, the three-year statute of limitations applied. [Citation.]" (*People v. McSherry, supra*, 143 Cal.App.4th at p. 602, fn. omitted.) We found the reasoning of *San Nicolas* persuasive, concluding: "Because section 647.6, subdivision (c)(2) is an 'offense punishable by imprisonment in the state prison,' the three-year statute of limitations applies. (§ 801.)" (*People v. McSherry, supra*, at p. 602.)

---

[6] Section 647.6, subdivision (c)(2), provides: "Every person who violates this section after a previous felony conviction under Section 261, 264.1, 269, 285, 286, 288a, 288.5, or 289, any of which involved a minor under 16 years of age, or a previous felony conviction under this section, a conviction under Section 288, or a felony conviction under Section 311.4 involving a minor under 14 years of age shall be punished by imprisonment in the state prison for two, four, or six years."

We also concluded *Turner* was distinguishable: "Applying *Turner* here, McSherry asserts that because the conduct underlying his conviction, absent [his] recidivism, constituted a misdemeanor, the applicable statute of limitations is one year. However, *Turner* involved the Three Strikes law, which constitutes an alternate sentencing scheme. . . . [¶] On the other hand, annoying or molesting a child with a prior conviction of a lewd act in violation of section 288 is a felony punishable by a term of two, four or six years in state prison. (§ 647.6, subd. (c)(2).) Because the maximum term prescribed by statute for a violation of section 647.6, subdivision (c)(2), is six years, the applicable statute of limitations is three years." (*People v. McSherry, supra,* 143 Cal.App.4th at p. 603, citation omitted.)[7]

In *People v. Johnson* (2006) 145 Cal.App.4th 895 [51 Cal.Rptr.3d 893], the defendant was convicted of indecent exposure under a statute (§ 314) which, like section 647.6, is either a misdemeanor or a felony depending on whether the defendant has a prior conviction.[8] *Johnson* rejected the defendant's reliance on *Turner*: "*Turner* did not address the question presented here, i.e., the limitations period applicable to 'hybrid' statutes providing for misdemeanor or felony treatment depending upon the presence or absence of aggravating factors. *Turner* dealt with the interpretation and application of sections 799 and 805, where the defendant was charged with an offense under the three strikes law . . . ." (*People v. Johnson, supra,* at pp. 902–903.) Responding to the defendant's reliance on "a broader reading of *Turner*, suggesting that *any* statutory use of prior convictions to increase punishment necessarily relates not to the punishment prescribed by statute for the *offense*, but only to the circumstances of a particular *offender*," *Johnson* reasoned

---

[7] *McSherry* contains the following dicta: "Applying *Turner* here, McSherry asserts that because the conduct underlying his conviction, absent McSherry's recidivism, constituted a misdemeanor, the applicable statute of limitations is one year. However, *Turner* involved the Three Strikes law, which constitutes an alternate sentencing scheme. [Citation.] Thus, the term imposed under the Three Strikes law cannot be considered the 'maximum punishment prescribed by statute for the offense' under section 805, subdivision (a). Accordingly, *Turner* properly rejected the trial court's reliance on the Three Strikes law to determine the statute of limitations." (*People v. McSherry, supra,* 143 Cal.App.4th at p. 603.) We would not now make this argument, and it was unnecessary to our holding in *McSherry*.

In *McSherry*, we also relied on subsequent acts of the Legislature "indicat[ing] its intent to adopt the *San Nicolas* result." (*People v. McSherry, supra,* 143 Cal.App.4th at p. 604; see also *People v. Shaw* (2009) 177 Cal.App.4th 92, 100 [99 Cal.Rptr.3d 112] [agreeing that *McSherry* properly distinguished *Turner* because "section 647.6 does not involve an alternative sentencing scheme"].)

[8] Section 314, subdivision 1, makes indecent exposure a misdemeanor. But the same statute also provides: "Upon the second and each subsequent conviction under subdivision 1 of this section, or upon a first conviction under subdivision 1 of this section after a previous conviction under Section 288, every person so convicted is guilty of a felony, and is punishable by imprisonment in state prison."

that, because *"Turner* interpreted section 805 only in the context of the three strikes law and application of the limitations period provided under section 799," it had "no direct application in this context before us." (*People v. Johnson, supra*, at p. 904.)

Having distinguished *Turner*, the Court of Appeal in *Johnson* focused on key language in section 805: "The ultimate issue is whether the existence of a prior conviction for a violation of section 314, subdivision 1, which elevates the current violation to felony status is an 'enhancement' within the meaning of section 805 that must be disregarded in determining the 'maximum punishment.' We conclude that it is not. [¶] The term 'enhancement' has a well-defined meaning. 'The term "enhancement" is narrowly defined as "an additional term of imprisonment added to the base term[.]" (Cal. Rules of Court, rule 405(c).)' [Citations.] . . . We find that the aggravating circumstances which make violation of section 314, subdivision 1 a more serious offense and thereby a felony, including the recidivist provisions, do not meet the definition of 'enhancements' as that term is used in section 805, and therefore do not limit consideration of the statutory maximum state prison punishment otherwise provided for this offense in assessing the limitations period for prosecution." (*People v. Johnson, supra*, 145 Cal.App.4th at p. 905.)

c. *People v. Perez.*

▮ Finally, the issue in *People v. Perez* (2010) 182 Cal.App.4th 231 [105 Cal.Rptr.3d 749], was whether an allegation under the so-called "One Strike" provision (§ 667.61) rendered a charge of forcible child molesting (§ 288, subd. (b)(1)) subject to section 799 (prosecution may be commenced at any time) or to section 800 (prosecution must be commenced within six years). Perez had been convicted, in a single proceeding, of molesting three victims. Under section 677.61, subdivisions (b), (c)(4) and (e)(5), a defendant convicted of having molested more than one child is subject to a life sentence.[9] *Perez* held the applicable limitations period was section 799, reasoning two recent Supreme Court decisions had made "clear that determining whether an offense is punishable by life imprisonment must take into account an alternative sentencing scheme that applies to the offense based on other criminal conduct that the trier of fact has found to have occurred." (*People v. Perez, supra*, 182 Cal.App.4th at p. 237.)

---

[9] Section 667.61, subdivision (b), prescribes a 15-year-to-life term for a person convicted of child molestation (§ 667.61, subd. (c)(4)) if "[t]he defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim" (§ 667.61, subd. (e)(4)).

In *People v. Jones* (2009) 47 Cal.4th 566 [98 Cal.Rptr.3d 546, 213 P.3d 997], the defendant was convicted for shooting at an inhabited dwelling (§ 246), and faced a life sentence because he had committed the crime to benefit a criminal street gang (§ 186.22, subd. (b)(4)). The question was whether he had committed a "felony punishable" by life imprisonment (§ 12022.53, subd. (a)(17)), thereby triggering an additional 20-year firearm enhancement under section 12022.53, subdivision (c).[10] *Jones* reasoned the subdivision of the gang statute mandating a life term in this situation was neither a sentence enhancement nor a substantive offense, but rather an alternative penalty provision: "[D]efendant's life sentence was imposed under section 186.22(b)(4), which sets forth the *penalty for the underlying felony* under specified conditions. . . . 'Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself,* when the jury has determined that the defendant has satisfied the conditions specified in the statute.' [Citation.] Here, defendant committed the felony of shooting at an inhabited dwelling (§ 246), he personally and intentionally discharged a firearm in the commission of that felony (§ 12022.53(c)), and because the felony was committed to benefit a criminal street gang, it was punishable by life imprisonment (§ 186.22(b)(4)). Thus, imposition of the 20-year sentence enhancement of section 12022.53(c) was proper." (*People v. Jones, supra,* 47 Cal.4th at p. 578.)

The companion case to *Jones* was *People v. Brookfield* (2009) 47 Cal.4th 583 [98 Cal.Rptr.3d 535, 213 P.3d 988], which also involved a defendant subject to a life term under the gang statute for shooting at an inhabited dwelling. Brookfield, however, had not personally used a firearm and, therefore, imposition of an additional firearm enhancement under section 12022.53 depended on the meaning of subdivision (e)(2), which provides: "An *enhancement* for participation in a criminal street gang . . . shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense." (§ 12022.53, subd. (e)(2), italics added.) The Attorney General argued subdivision (e)(2) was inapplicable because the relevant subdivision of the gang statute (§ 186.22, subd. (b)(4)) was an alternative penalty provision, not an enhancement. Brookfield argued use of the word "enhancement" in section 12022.53, subdivision (e)(2), "encompasses not only an *additional prison term* but also *any greater term of imprisonment* (such as a penalty provision) that is imposed because the underlying crime was committed to benefit a criminal street gang." (*People v. Brookfield, supra,* 47 Cal.4th at p. 592.)

---

[10] Section 12022.53, subdivision (a)(17), provides that the firearm enhancements set forth in section 12022.53 apply to "[a]ny felony punishable by death or imprisonment in the state prison for life."

Our Supreme Court agreed with Brookfield:

"We acknowledge that decisions of this court in the last decade have, in construing various subdivisions of section 186.22 (the primary section referred to by the word 'enhancement' in section 12022.53(e)(2)), drawn a distinction between penalty provisions and sentence enhancements in that section; these decisions have construed the word 'enhancement' as meaning an *additional* term of imprisonment, explaining that a penalty provision is not a sentence enhancement because the former provides an *alternate* penalty rather than an *additional* punishment. [Citations.] The Attorney General urges us to give the word 'enhancement' in section 12022.53(e)(2) this same meaning.

"If the cases cited in the preceding paragraph had already been decided when the Legislature enacted section 12022.53, it would be reasonable to infer that the Legislature was aware of the distinction this court has drawn between the sentence enhancements and the penalty provisions set forth in section 186.22, and that the Legislature intended the word 'enhancement' in the statute to have the narrow meaning articulated by this court. That narrow meaning is this: The word 'enhancement' refers *only to* a sentence enhancement, not a penalty provision. But the cases in question were decided *after* the Legislature's enactment of section 12022.53 in 1997. Thus, the Legislature did not have the benefit of this court's later decisions that have given the term 'enhancement' the narrow meaning that the Attorney General argues we should apply to that term in section 12022.53(e)(2).

"It appears that the Legislature's use of the term 'enhancement' in section 12022.53(e)(2) was intended to refer broadly to any greater term of imprisonment for a crime that, as here, is committed to benefit a criminal street gang. This means that, as used in the statute, the word 'enhancement' includes not only the sentence enhancements in section 186.22, but also the alternate penalty provisions in that section. Our reasons follow.

"Section 12022.53's sentencing scheme distinguishes between four types of offenders. The first group consists of those offenders who personally used or discharged a firearm in committing a gang-related offense that is specified in section 12022.53. These defendants are subject to *both* to [*sic*] the harsh enhancement provisions of 12022.53 *and* the gang-related sentence increases of section 186.22. The second group consists of *accomplices* to a gang-related offense specified in section 12022.53 in which, as here, not the defendant but another principal personally used or discharged a firearm. They are subject to additional punishment under *either* section 12022.53 *or* the gang-related

sentence increases under section 186.22, but not *both*. The third group consists of those who personally used or discharged a firearm during an offense that is specified in section 12022.53 but is *not gang related*. They are subject to additional punishment under section 12022.53, but because the crime is not gang related, the gang-related sentence increases of section 186.22 do not apply. The fourth group consists of those who committed a crime that is listed in section 12022.53 but is not gang related, and who did not personally use or discharge a firearm. This last group of defendants is not subject *either* to the gang-related sentence increases of section 186.22 (because the crime was not gang related) *or* to the additional punishment provisions of section 12022.53 (because the offender did not personally use or discharge a firearm).

"The Attorney General's argument here that we should construe the term 'enhancement' in section 12022.53(e)(2) as meaning an 'additional term of imprisonment'—the narrow, technical meaning generally used in this court's past decisions—would partially nullify, in some cases, the distinction that the Legislature sought to draw between the first two of the four groups of offenders described in the preceding paragraph: those who personally used firearms in gang-related felonies, and those who were merely accomplices to such offenses. To accept the Attorney General's statutory interpretation would have the following effect: A defendant who in a gang-related offense person-ally used or discharged a firearm would be punished more harshly than an accomplice to such an offense in cases in which an increased sentence is imposed under a *sentence enhancement provision* of section 186.22; but when an increased sentence is imposed under a *penalty provision* of section 186.22, the perpetrator who personally used or discharged the gun and the accomplice who did not do so would receive equally severe penalties.[11] To allow such a result would be inconsistent with the Legislature's apparent goal, in section 12022.53's subdivision (e), of reserving the most severe sentences for those who *personally* used or discharged a firearm in the commission of a gang-related crime.

"Unlike the Attorney General's interpretation, defendant's construction of the word 'enhancement' in section 12022.53(e)(2) is consistent with the legislative purpose described above. Under defendant's statutory interpreta-tion, a defendant who *personally* used or discharged a firearm in a gang-related felony specified in section 12022.53 will be subject to greater punishment for *both* gang participation under section 186.22 *and* firearm use

---

[11] For instance, commission of any violent felony for the benefit of a street gang incurs a *sentence enhancement* of 10 years (§ 186.22, subd. (b)(1)(C)), while commission of the offense of shooting at an occupied dwelling for the benefit of a street gang incurs an *alternative penalty provision* sentence of life imprisonment (§ 186.22, subd. (b)(4)(B)).

under section 12022.53, but an accomplice who, as defendant here, did not personally use or discharge a firearm would be subject to an increased sentence under *only one* of those two statutes." (*People v. Brookfield, supra*, 47 Cal.4th at pp. 592–594, fn. omitted.)

Based on the reasoning in *Jones* and *Brookfield*, the Court of Appeal in *Perez* concluded the life term mandated by the One Strike provision (§ 667.61) "is an alternate penalty scheme that, when charged, defines the length of imprisonment for the substantive offense of violating section 288, subdivision (b)(1) [(forcible child molesting)]. Thus, the unlimited timeframe for prosecution set out in section 799 for an offense 'punishable by death or by imprisonment in the state prison for life . . .' applies . . . ." (*People v. Perez, supra*, 182 Cal.App.4th at pp. 239–240.)

In response to the defendant's argument that *Turner* mandated the opposite result, *Perez* concluded *Turner* "should be narrowly construed to apply only to the antirecidivist Three Strikes law, and not to the One Strike law, which punishes, as relevant here, not recidivism but the commission of sexual offenses against more than one victim." (*People v. Perez, supra*, 182 Cal.App.4th at p. 241.) *Perez* pointed out *Turner* "considered the situations of wrongdoers 'who commit a current felony offense, *and* who are recidivist offenders' [citation] under the Three Strikes law. Defendant's case does not involve recidivism and the precise holding of *Turner* does not apply. *Turner* is instructive, however, insofar as it notes the Legislature's preference 'that the selection of the applicable statute of limitation should be based upon the seriousness of the offense as indicated by the punishment prescribed for it.' [Citation.] . . . Defendant's crimes were serious enough to earn him a life sentence; therefore they were serious enough to warrant prosecution at any time during his natural life." (*People v. Perez, supra*, 182 Cal.App.4th at pp. 241–242.)

### 4. *Discussion.*

As we shall explain, because we conclude *Turner*'s analysis should be limited to the statutes *Turner* was construing, *we hold a prosecution for premeditated attempted murder may be commenced "at any time" under section 799.*

> a. Turner *is distinguishable because it was construing the Three Strikes law.*

The parties agree that, according to *People v. Bright, supra*, 12 Cal.4th 652, premeditated attempted murder is neither a separate offense from

attempted murder, nor an enhancement, but rather an alternative penalty provision. However, the parties disagree about the effect of this designation as a penalty provision on the determination of the applicable statute of limitations. Specifically, the parties disagree about the effect of this designation on the meaning of the last sentence in section 805, subdivision (a): "Any enhancement of punishment prescribed by statute shall be disregarded in determining the maximum punishment prescribed by statute for an offense."

Anthony contends the applicable statute of limitations for premeditated attempted murder is section 800, not section 799, and argues this result is mandated by the holding in *People v. Turner, supra,* 134 Cal.App.4th 1591. According to Anthony, "*Turner* established that the exclusion in section 805 is not limited to disregarding sentencing elements explicitly designated 'enhancements.' "

The problem with this argument is that the *Turner* decision was entirely focused on the nexus between the statute of limitations scheme and the Three Strikes law. *Turner* manifested this focus repeatedly, saying things like: "The question whether an offense that normally is subject to the [three-year] limitation period of section 801 instead may be prosecuted 'at any time,' pursuant to section 799, *when allegations of a defendant's recidivist status expose the defendant to an indeterminate life term under the Three Strikes law*, is an issue of first impression." (*People v. Turner, supra,* 134 Cal.App.4th at p. 1596, italics added.) "In the context of selecting the applicable statute of limitations for a prosecution, the 'act' or 'offense' must refer to the current felony for which the defendant is to be, or is being, prosecuted, *not the facts of prior convictions . . . .*" (*Id.* at p. 1597, italics added.) "If anything, the direction in section 805 to disregard any enhancements in determining the maximum punishment prescribed for an offense clarifies that *the Legislature intended the relevant penalty to be the punishment imposed for commission of the crime itself, not additional or alternative penalties imposed based upon other facts or circumstances such as recidivism.*" (*Id.* at p. 1599, italics added.) *Turner* also cited the 1984 Law Revision Commission statement that the maximum punishment calculation should " 'disregard[] enhancement of the penalty *in the case of an habitual offender.*' " (*Id.* at p. 1600, italics added.)

  b. *We follow* Perez *because it involved an offense-based analysis.*

We find it significant that *Turner*'s reasoning was so anchored in the Three Strikes context, which involves offender-based sentencing factors rather than

offense-based sentencing factors.[12] In contrast, the increased sentence in *Perez* was entirely offense based, flowing from the allegation that in his current offense Perez had molested more than one victim. Similarly, Anthony's increased sentence is entirely offense based, flowing from the allegation he premeditated the attempted murder he is accused of having committed. To paraphrase *Perez*, "[Anthony's] case does not involve recidivism and the precise holding of *Turner* does not apply." (*People v. Perez, supra,* 182 Cal.App.4th at p. 241.) Or as *Johnson* explained, because "*Turner* interpreted section 805 only in the context of the three strikes law and application of the limitations period provided under section 799," the case "has no direct application in this context before us." (*People v. Johnson, supra,* 145 Cal.App.4th at p. 904.) Indeed, it is unclear to us that the *Turner* court would have held the life sentence under section 664, subdivision (a), must be disregarded under section 805.

Citing *Brookfield*'s acknowledgment that only recently had the Supreme Court been careful about distinguishing between enhancements and alternative penalty provisions (*People v. Brookfield, supra,* 47 Cal.4th at pp. 592–593), Anthony asserts *Brookfield* establishes that the distinction between enhancements and alternative penalty provisions must be disregarded for purposes of section 805. He argues: "[T]he decision [here] turns on the interpretation of the term 'enhancement' in a statute which preceded the Supreme Court's development, starting in 1999, of the distinction between enhancements narrowly understood—as prison terms in addition to those imposed for the charged offense—and sentencing provisions imposing alternative sentences. [¶] Section 805 was adopted in 1984, well before 1999. Here, as in *Brookfield*, it must be assumed that the Legislature's use of the term 'enhancement' [in section 805] was 'intended to refer broadly to any greater terms of imprisonment' than the 'maximum punishment prescribed by statute for the offense. . . .' "

    c.   *In this context, section 805's reference to "enhancement" means a true enhancement.*

However, several factors persuade us that we need not assume use of the term "enhancement" in section 805 means anything more than a technical enhancement, i.e., an additional prison term added to a base term. *Brookfield* cautioned that "Nothing in this opinion should be read as undermining the validity of the strict distinction this court has drawn in the past between

---

[12] Indeed, *Turner* made a point of explaining the distinction between these two concepts, saying: "Both sections 799 and 805 refer only to prosecution for an '*offense*,' and punishment prescribed by 'statute for the *offense*,' not to prosecution and punishment that applies to a particular *offender*, and which is based upon facts other than the commission of the offense for which he or she is being prosecuted." (*People v. Turner, supra,* 134 Cal.App.4th at p. 1597.)

sentence enhancements and penalty provisions *in other contexts." (People v. Brookfield, supra,* 47 Cal.4th at p. 595, italics added.)

Moreover, it appears the Courts of Appeal were well aware of the narrow, technical definition of "enhancement" back in 1984, when the current statute of limitations scheme was enacted. (See, e.g., *In re Anthony R.* (1984) 154 Cal.App.3d 772, 776 [201 Cal.Rptr. 299] ["The term 'enhancement' has a well-established meaning in California law. It is defined as 'an additional term of imprisonment added to the base term' for the particular offense. (Rule 405(c), Cal. Rules of Court; see *People v. Lawson* (1980) 107 Cal.App.3d 748, 754 [165 Cal.Rptr. 764].)"]; *People v. Guilford* (1984) 151 Cal.App.3d 406, 411 [198 Cal.Rptr. 700] ["By definition, an enhancement 'means an additional term of imprisonment added to the base term.' (Cal. Rules of Court, rule 405(c).)"]; *People v. Best* (1983) 143 Cal.App.3d 232, 236 [191 Cal.Rptr. 614] ["California Rules of Court, rule 405(c), describes an 'enhancement' as 'an additional term of imprisonment added to the base term.' "].) Indeed, *Bright* itself referred to former rule 405(c) when construing the nature of section 664, subdivision (a). (*People v. Bright, supra,* 12 Cal.4th at p. 656, fn. 2.)[13]

■ Hence, we do not find any authority mandating that, in the context before us, we are required to read section 805's reference to "enhancement" as having anything other than its technical meaning: an additional term of imprisonment added to the base term. And, in that case, there is no reason, when calculating the maximum punishment under section 805, to disregard the life term prescribed in section 664, subdivision (a), for premeditated attempted murder.

> d. *Anthony's reading of section 805 would lead to an anomalous result.*

Trying a different tack, Anthony argues *Brookfield* "found that a narrow interpretation of 'enhancement' would create sentencing anomalies in the specific context of section 12022.53(e)(2)." But an argument raising concerns about inconsistent or absurd results in the case at bar will not weigh in Anthony's favor. As we have detailed, *ante, Brookfield* worried that the interplay of the firearm enhancement statute (§ 12022.53) and the gang statute (§ 186.22) would have an anomalous result if a narrow construction of "enhancement" were adopted. But there would be an anomalous result in the case at bar if we agreed with Anthony. That is because the statute of limitations for attempted murder and for premeditated attempted murder would be the same, the six-year period under section 800, even though the

---

[13] California Rules of Court, former rule 405(c) has since been renumbered rule 4.405(3), which provides: " 'Enhancement' means an additional term of imprisonment added to the base term."

two punishments would be drastically different: a maximum of nine years for attempted murder, compared to a mandatory life term for premeditated attempted murder.

■ As *Turner* pointed out, when the Legislature overhauled the entire statute of limitations scheme in 1984, "[t]he revised scheme reflected the primary recommendation of the Law Revision Commission that the length of a 'limitations statute should generally be based on the seriousness of the crime,' " and "[t]he commission suggested that the seriousness of an offense could easily be determined in the first instance by the classification of the crime as a felony rather than a misdemeanor. Within the class of felonies, 'a long term of imprisonment is a determination that it is one of the more serious felonies; and imposition of the death penalty or life in prison is a determination that society views the crime as the most serious.' " (*People v. Turner, supra*, 134 Cal.App.4th at pp. 1594–1595.) As *Perez* concluded, "Defendant's crimes were serious enough to earn him a life sentence; therefore they were serious enough to warrant prosecution at any time during his natural life." (*People v. Perez, supra*, 182 Cal.App.4th at pp. 241–242.)

e. *Section 664, subdivision (a) prescribes an offense-based punishment for premeditated attempted murder.*

■ Finally, Anthony asserts that even assuming *Perez*'s narrow reading of the word "enhancement" in section 805 is correct, and "[e]ven if a life sentence under section 664(a) is held not to be an enhancement within the meaning of section 805, the question remains . . . whether the Legislature intended that life sentence to be treated as the maximum sentence 'prescribed by the statute for the offense' within the meaning of section 805 or not." Anthony argues the Legislature did not so intend because it must have meant "that the state of mind warranting a life sentence under section 664(a) is a fact about the offender separate from the offense. . . . . *Perez* is therefore distinguishable, and Petitioner's offense falls, not under section 799, but within the six year limitations period set by section 800." We disagree. In our understanding, "a fact about the offender separate from the offense" would refer to such status-based sentencing factors as prior convictions; it would not refer to an offense-based factor such as Anthony's alleged state of mind at the moment he allegedly tried to murder the victim.

■ We conclude Anthony's prosecution for premeditated attempted murder did not violate the statute of limitations because it was permissibly brought "at any time" under section 799.

## DISPOSITION

The order to show cause is discharged. The petition for writ of mandate is denied.

Croskey, J., and Aldrich, J., concurred.

A petition for a rehearing was denied October 8, 2010, and petitioner's petition for review by the Supreme Court was denied January 12, 2011, S187814.