Filed 4/3/14  P. v. Simon CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248982 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA123230) |
| v. | |
| MARCUS SIMON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke, II, Judge.  Affirmed.

David W. Scopp, under appointment by the Court of Appeal, for Luna and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Marcus Simon pled no contest to second degree attempted murder and admitted a firearm enhancement allegation. Simon contends the trial court improperly denied his motion to withdraw his plea on the ground he did not fully understand the consequences of his plea due to mental illness. We affirm the judgment.

**FACTS**

Simon was 17 years old on May 29, 2011, when he shot Josua Billips after an argument about Simon's ex-girlfriend, Amber Warfield. Billips was wounded in his upper torso and left arm. When the police took Simon into custody, he offered to show them where he had hidden the gun; a .38 caliber revolver was subsequently recovered in a parking lot. Simon was charged with attempted murder[1] (Pen. Code, §§ 664/187, subd. (a); count 1),[2] possession of a firearm by a minor (12010, subd. (a)(1); count 2), and misdemeanor possession of live ammunition by a minor (§ 1201, subd. (b)(1); count 3). It was further alleged that a principal personally and intentionally discharged and used a firearm. (§ 12022.53, subds. (b), (c) & (e)(1).) Simon was assigned an alternate public defender and pled not guilty.

Thereafter, Simon agreed to plead no contest to attempted murder with a firearm enhancement allegation under section 12022.53, subdivision (c), in exchange for a 25

---

[1] The information initially charged Simon with attempted willful, deliberate, and premeditated murder (§§ 664/187, subd. (a)), but the People orally amended count 1 to charge attempted second-degree murder. The crime of "attempted second degree murder" is a misnomer. As explained in *People v. Favor* (2012) 54 Cal.4th 868 (*Favor*), there is no substantive crime of attempted second degree murder. Imposing a greater sentence for an attempted murder that is willful and premeditated is a matter of punishment, and does not create a greater degree of attempted murder. "'[T]he statutory language employed in prescribing an additional penalty for attempted murder . . . reflects a legislative intent to create a penalty provision specifying a greater term, rather than a substantive offense.'" (*Id.* at p. 877, quoting *People v. Bright* (1996) 12 Cal.4th 652, 668 (*Bright*).) The division of a crime into degrees is exclusively a legislative function. (*Bright, supra*, at p. 670.) In short, the offense of premeditated attempted murder is not a separate offense from attempted murder. (*Favor, supra*, 54 Cal.4th at p. 877, citing *Anthony v. Superior Court* (2010) 188 Cal.App.4th 700, 706.)

[2] All further statutory references are to the Penal Code unless otherwise indicated.

years in state prison sentence. Simon was advised of the nature of the charges against him, his possible defenses, and the consequences of a no contest plea. He affirmatively indicated he understood these issues. Simon was advised of and explicitly waived his right to trial by jury, to confront and cross-examine witnesses, to subpoena witnesses into court to testify in his defense, and against self-incrimination. Simon indicated he was changing his plea freely and voluntarily and because it was in his best interest. He indicated no threats or promises were made to him to get him to change his plea. The trial court found Simon's plea and waivers were made freely, voluntarily, knowingly, and intelligently, with an understanding of the charges and consequences.

At the next hearing six weeks later, Simon moved to vacate his plea. He appended a declaration to the motion indicating he "had no knowledge of what was going on with the case, and []felt [he] had no choice but to take the deal offered by the Prosecution." He indicated he suffers with posttraumatic stress disorder and mental health issues. A new attorney was appointed to represent Simon and a supplemental motion to withdraw the plea was filed.

In support of his motion, Simon submitted a second declaration and reports from a court-appointed psychiatrist and a forensic psychologist. In his second declaration, Simon explained that he had a history of mental health issues, including posttraumatic stress symptoms, depression, and anxiety, for which he had been receiving treatment and medication since the age of 12. Further, that while in juvenile hall for a previous incident, Simon was diagnosed with post-traumatic stress disorder as a result of being shot in 2008 in what he described as "gang retaliation." He was in the hospital for one week and could not eat or walk for approximately three months.

At the time of his no contest plea, the medical staff at the county jail had placed him on medication, but it was not helping his depression or anxiety. He was unable to sleep, and when he did, he suffered from terrible nightmares. He was unable to focus on simple tasks like reading and writing and he was extremely agitated. Simon explained, "As a result of the ineffectiveness of the medication and the effects this had on me, I was not able to make a knowing and intelligent waiver of my rights as they were explained to

3

me." Simon claimed his medications were changed subsequent to his plea agreement. Thus, he was "able to think clearly, participate in [his] case, and understand what is being explained . . . ."

Simon also submitted a declaration from Dr. Rebecca Crandall, a forensic psychiatrist, who reported that Simon was suffering from depression and anxiety around the time of his plea. She concluded, "At the time of his plea offer in August 2012, [Simon] was most likely suffering from symptoms of posttraumatic stress as well as depression and anxiety. Both his mother and his girlfriend described him as impulsive, easily upset and overwhelmed. It is difficult to accurately assess his state of mind at the time that he answered his plea without documentation of medical exams at that time; however, according to Dr. Booker's report, [Simon] was not receiving medications in March, 2012. It is likely that his multiple symptoms of stress, lack of support, easy overwhelm, history of hopelessness, and nonresponse to medications compromised his ability to make a knowing and intelligent waiver of his rights due to anxiety and depression." She noted that Simon was never suicidal and never had auditory hallucinations. When she interviewed him, she noted that his thought process was "linear and goal directed" with "no signs of psychosis during the interview" and "[h]is memory and cognition were grossly intact."

Kevin Booker, Ph.D. evaluated Simon five months before his plea to determine Simon's fitness for juvenile, rather than adult, court proceedings. He noted that Simon was not currently taking any medication, nor was he under the care of a mental health practitioner. He opined Simon suffered from chronic posttraumatic stress disorder. He recommended that Simon remain in juvenile court and opined "[t]he act he committed appears to have been an impulsive and reactionary act, rather than a sophisticated, premeditated act given that the act occurred in an open setting and in response to [Simon] being confronted by an individual who had apparently addressed him with hostile, provocative, fear-inducing language. Thus, minor [Simon's] actions demonstrate a crime of 'psycholigical neurosis' related to psychopathological fear and hypervigilance, rather than one of premeditation and sophistication." (Emphasis omitted.)

4

At the hearing on the motion to withdraw the plea, the prosecutor argued that the whole report by Crandall was "speculation" because she stated it was "difficult to accurately assess his state of mind" at the time that he answered his plea and that it was only "likely" his illness compromised his ability to make a knowing and intelligent waiver. The prosecutor said she personally explained to Simon in lockup his potential prison exposure and the evidence that would be presented against him. The prosecutor observed, "at no point did the defendant seem confused about that. [¶] . . . The impression was that he was an 18-year old kid that was having a hard time accepting a term of imprisonment that was a greater number of years than he had currently been alive. [¶] Any questions he asked were answered. He was not asking questions that were indicative of confusion about the process, that he didn't understand. He seemed like it was more of just a difficult decision."

After due consideration of the record, the papers, and oral argument, the trial court denied the motion, finding "the plea was voluntary and intelligent under the totality of the circumstances." Simon was sentenced to an aggregate term of 25 years in state prison, consisting of five years for the attempted murder count and 20 years for the firearm enhancement.

Simon filed a timely notice of appeal; the trial court granted his certificate of probable cause.

## DISCUSSION

The sole issue on appeal is whether the trial court abused its discretion when it denied Simon's motion to withdraw his plea. Simon contends his posttraumatic stress disorder, anxiety, and depression overcame his judgment such that it rendered his plea unintelligent and his motion to withdraw his plea should have been granted. We find no abuse of discretion.

A defendant who seeks to withdraw his guilty plea may do so before judgment has been entered upon a showing of good cause. (§ 1018.) Good cause includes evidence of mistake, ignorance, inadvertence, or any other factor which overcomes a defendant's free and clear judgment. (*People v. Cruz* (1974) 12 Cal.3d 562, 566; *People v. Castaneda*

5

(1995) 37 Cal.App.4th 1612.)  "The language in [section] 1018 'for good cause shown' recognizes the long-established rule that leave to withdraw a plea, with its resulting inconvenience and waste of time and effort of courts and prosecuting officers, should not be lightly granted . . . ."  (4 Witkin and Epstein, California Criminal Law (4th ed. 2012) Pretrial Proceedings § 326, p. 606.)  "The defendant has the burden to show, by clear and convincing evidence, that there is good cause for withdrawal of his [] guilty plea." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415-1416.)

A motion to withdraw a plea is addressed to the sound discretion of the trial judge and must be upheld unless an abuse thereof is clearly demonstrated.  (*People v. Caruso* (1959) 174 Cal.App.2d 624, 633 (*Caruso*).)  Additionally, we are required to accept all factual findings of the trial court that are supported by substantial evidence.  (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 917 (*Ravaux*).)

Here, there is substantial evidence to support the trial court's determination that Simon's plea was knowing, intelligent, and voluntary.  First, Simon was represented by counsel, who joined in the waivers and concurred in the plea.  Although Simon contends that he was pressured by his attorney to accept the plea agreement, there is no contention that the attorney provided ineffective assistance of counsel.  "The fact that [a defendant] may have been persuaded, or was reluctant, to accept the plea is not sufficient to warrant the plea being withdrawn."  (*Ravaux, supra,* 142 Cal.App.4th at p. 919; *People v. Urfer* (1979) 94 Cal.App.3d 887, 892.)  Indeed, Simon's subsequent counsel admitted that he did not think Simon should withdraw his plea.

Also, Simon indicated numerous times that he understood the consequences of the guilty plea and the rights he was waiving.  He answered "yes" without hesitation when asked by the prosecution whether he entered the plea "freely and voluntarily and because [he felt] it's in [his] best interest to do this."  There is no indication in the record that any person in the courtroom, including the trial court, believed Simon was impaired, overwhelmed or less than completely lucid.  In fact, the trial court found that "Simon's pleas and waivers are knowingly, expressly, understandingly, and intelligently made and

6

are entered into freely and voluntarily with an understanding of the charges and the consequences of the plea."

Nevertheless, Simon contends that his posttraumatic stress disorder as well as his anxiety and depression overcame his judgment to render his plea unintelligent. In evaluating Simon's claim, we are guided by the *Caruso* case. There, the defendant sought to withdraw his guilty plea based on a declaration asserting that, at the time of his plea, he was in a state of mental distress, including fear, anxiety, and other emotional factors which prevented him from exercising calm, deliberate, and intelligent judgment. The defendant also contended his plea was entered under the inducement of his attorney, who did not read the grand jury transcripts and only relied on the representations of the prosecutor regarding the strength of the People's case. (*Caruso, supra*, 174 Cal.App.2d at p. 636.) The court of appeal found that the defendant's "contentions with respect to his mental state and his reliance on the importuning of an allegedly unprepared attorney involved factual questions for the trial court to resolve. [Citations.] The trial court was not bound to accept and give credence to the affidavits submitted in support of the motion. [Citation.]" (*Ibid.*) The court stated the "circumstances revealed by the record are wholly inconsistent with the claim that the plea was not the product of [the defendant's] free will and judgment. The question whether [his] plea was a product of overreaching was a question for the trial court to resolve." (*Id.* at p. 637.)

Likewise, Simon's assertions about his mental state and reliance on his attorney were factual issues for resolution by the trial court. Here, the trial court was presented with conflicting evidence of Simon's state of mind, including Simon's declaration and the court's own recollection of and findings regarding Simon's demeanor during the plea colloquy. Even the psychological report by Crandall was not without contradictions. Although she concluded that Simon's anxiety and depression "likely" compromised his ability to make a knowing and intelligent waiver of his rights, Crandall also noted that Simon's thought process was "linear and goal directed" with "no signs of psychosis during the interview" and "[h]is memory and cognition were grossly intact." Similarly, the prosecutor noted that Simon did not appear confused when she interviewed him prior

7

to the plea agreement. Faced with this record, the trial court did not abuse its discretion in determining Simon had not met his burden to warrant withdraw of the plea.

We are not persuaded by *United States v. Howard* (9th Cir. 2004) 381 F.3d 873, 877, the federal case relied upon by Simon. The issue to be determined there was whether the defendant had made a sufficient showing to warrant an evidentiary hearing. As there were no factual disputes that he was under the influence of a powerful painkiller at the time he entered into a plea bargain, the Ninth Circuit concluded he was entitled to an evidentiary hearing. (*Id.* at p. 883.) Simon stands in a much different procedural posture and there were disputed facts for the trial court's resolution.

## DISPOSITION

The judgment is affirmed.


BIGELOW, P. J.

We concur:


FLIER, J.


GRIMES, J.