Filed 8/5/16  P. v. Marmolejo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064120 |
| v. | (Super.Ct.No. BAF1300539) |
| RAYMOND SANTANA MARMOLEJO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jean P. Leonard, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meagan Beale, and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION[1]

Defendant Raymond Santana Marmolejo, a career criminal, threatened a store clerk while trying to steal a beer bottle from a liquor store. A jury convicted him of attempted robbery, burglary, and felony theft. (§§ 211/664, 459, 484, subd. (a); and 666, subd. (b)(1).) Defendant admitted his prior convictions for robbery in 2001 and arson in 2003. (§§ 211 and 451, subd. (c).) The court sentenced defendant to 25 years to life on count 1.[2] After the court granted defendant's petition to reduce his convictions on counts 2 and 3 to misdemeanors (§ 1170.18), the court imposed sentences of 364 days each on counts 2 and 3 and credited defendant with time served on those counts.

On appeal, defendant argues the court should have granted his *Romero*[3] motion and his sentence of 25 years to life constitutes cruel and unusual punishment. He also argues his time served should be credited to his attempted robbery sentence not his misdemeanor sentence for burglary. We agree with the latter point. Otherwise, we affirm the judgment.

## II

## FACTUAL BACKGROUND

Jose Saucedo was a clerk and cashier at a Beaumont liquor store. At 1:00 p.m. on

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] Before trial defendant refused an offer for a sentence of five years.

[3] *People v. Romero* (1996) 13 Cal.4th 497.

August 2, 2013, defendant came into the store accompanied by a bald man. As Saucedo watched them on a video camera, each man took a 22-ounce Dos Equis beer and concealed it on his person. When they approached the front counter, Saucedo pointed a golf club at them and told them to return the beers.

Defendant and his companion argued with Saucedo, asserting defendant was bigger than Saucedo and could "fuck [him] up." Defendant made a gesture as if to throw the beer bottle at Saucedo. Then defendant placed the beer bottle on the counter and asked Saucedo to open it. Instead, Saucedo laughed slightly, grabbed the beer, and moved it out of defendant's reach. Defendant continued to argue and threaten Saucedo.

Saucedo was scared and nervous because defendant was bigger than him. Saucedo was 5 feet, 4 inches and weighed 150 pounds. Saucedo thought defendant was about 5 feet, 6 inches and weighed 200 pounds and the bald man was about 5 feet, 8 inches and weighed 200 pounds. Defendant was actually 6 feet tall and weighed 230 pounds. Leroy was 6 feet, 1 inch, and weighed 200 pounds.

Both men left the store and the bald man never returned the beer he took. Saucedo activated the panic button to call the police.

Kayla Myers worked at a nearby bar. After leaving the liquor store, defendant and another man came into the bar and stayed briefly before leaving through the back entrance.

The Beaumont police investigated and arrested defendant and a man named Morales at Morales's house where the police also recovered a near-empty bottle of Dos Equis beer. However, the bald man was not Morales but another person named Kenneth

3

Leroy who was found hiding in a closet in Morales's house. Defendant and Leroy had no money, wallets, or credit cards.

In a police interview, defendant said he was being "dumb" when he gestured at Saucedo with the beer bottle. Defendant admitted trying to steal beer because Leroy and he had no money. Defendant denied that he was planning to hurt Saucedo.

Saucedo told police he grabbed the golf club in self-defense and that defendant put down the beer when he saw the golf club.

III

DISCUSSION

We hold the trial court did not abuse its discretion in denying defendant's motion to dismiss his two strikes. Defense counsel made two motions to strike, one before and one after trial, both arguing that defendant had a troubled upbringing, a history of addiction, a brief period of rehabilitation, and a relapse in 2013. The People opposed the motions, arguing defendant was a career criminal with multiple felonies. The court acknowledged defendant's difficult childhood and his flawed efforts to rehabilitate but found the present crime involved planning and intimidation. In addition, given defendant's criminal record of nearly 20 years, there was no basis to grant him relief under *Romero*.

"In *Romero*, the state Supreme Court ruled that the Three Strikes law did not remove a sentencing court's discretion to dismiss a defendant's prior strike or strikes to achieve a punishment in the furtherance of justice. (*People v. Romero, supra*, 13 Cal.4th at p. 504.) In *People v. Williams* (1998) 17 Cal.4th 148, the Supreme Court explained

4

that a sentencing court's exercise of discretion to dismiss a prior strike is to be guided by the following standard: May the defendant, in light of his or her current crime, and his or her criminal history, background, character, and prospects, be deemed 'outside the . . . spirit' of the Three Strikes law, in whole or in part, and, hence, be treated as though he or she had not suffered the prior strike conviction.' (*Williams* at p. 161.) When the factors cited in *Williams, supra,* 17 Cal.4th 148, 'manifestly support the striking of a prior conviction and no reasonable minds could differ[,] the failure to strike would constitute an abuse of discretion.' (*People v. Carmony* (2004) 33 Cal.4th 367, 376-378.)" (*People v. Solis* (2015) 232 Cal.App.4th 1108, 1124.)

No abuse of discretion occurred here. According to his probation report, defendant committed his first crimes, robbery and trespass, in 1994 at the age of 17. After defendant was discharged from the California Youth Authority in 1997, his adult criminal offenses continued and included: domestic violence in 1998 and 1999 (§ 273.5); vehicle theft in 1998 (Veh. Code, § 10851, subd. (a)); robbery in 2001 (§ 211); furnishing firearms, weapons, or explosives in 2003 (§ 4574, subd. (a)); arson in 2003 (§ 451, subd. (c); drug possession (Health & Saf. Code, § 11377, subd. (a)) in 2008; and more than 10 years of probation violations from 1999 to 2009. Defendant also employed 11 aliases.

The 2001 robbery was committed at knifepoint by defendant and an accomplice. The 2003 arson was committed when defendant and two others torched an abandoned warehouse. During the present offense, acting with an accomplice, defendant threatened the victim verbally and with gestures, as well as effecting a getaway to evade arrest.

5

In light of all of the circumstances, the trial court did not abuse its discretion in denying defendant's *Romero* motion: "The record does not 'manifestly support the striking of a prior conviction' because [defendant] is not a defendant who must be deemed 'outside the . . . spirit' of the Three Strikes law. On the contrary, [defendant's] current offense and his criminal history support sentencing under the Three Strikes law." (*People v. Solis, supra,* 232 Cal.App.4th at p. 1125.)

Defendant also contends his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. We disagree: "When examining whether the length of a sentence violates the Eighth Amendment, a court may only apply a 'narrow proportionality' analysis. (*Ewing v. California* (2003) 538 U.S. 11, 20.)" (*People v. Solis, supra,* 232 Cal.App.4th at p. 1125.) Defendant's sentence is not "so disproportionate to his crime and his life's criminal history that it violates constitutionally prescribed sentencing limits." (*Ibid.*) Although articulated slightly differently, California also prohibits punishment that is "grossly disproportionate" to the crime or the individual culpability of the defendant. (*People v. Dillon* (1983) 34 Cal.3d 441, 450, 478, fn. 25.) Under both federal and state standards, the court examines the nature of the offense and the defendant, the punishment for more serious offenses within the jurisdiction, and the punishment for similar offenses in other jurisdictions. (*Solem v. Helm* (1983) 463 U.S. 277, 290-291; *In re Lynch* (1972) 8 Cal.3d 410, 425, 431, 436.) Any one of these three factors can be sufficient to demonstrate that a particular punishment is cruel and unusual. (*Dillon,* at p. 487, fn. 38; *People v. Mendez* (2010) 188 Cal.App.4th 47, 64-65.)

Here, defendant and his cohort belligerently threatened a store clerk over a few dollars' worth of beer. Defendant acted in full awareness of his criminal history and his exposure as a recidivist offender. (*Ewing v. California, supra,* 538 U.S. at pp. 25 and 29.) In view of his crime and his status as a habitual adult offender, the punishment meted out to defendant is not so grossly disproportionate as to constitute cruel and unusual punishment.

We agree, however, with defendant's argument that, because his sentence on count 2 should have been stayed under section 654, his credit for time served on that count should be credited to his sentence on count 1 for 25 years to life.

V

DISPOSITION

We order the abstract of judgment modified to allow defendant's credit for time served on count 2 to be applied to his sentence on count 1. The trial court shall send a copy of the modified abstract of judgment to the Department of Corrections and Rehabilitation. We affirm the judgment as modified.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

SLOUGH
J.

7