Filed 12/3/25  P. v. Bisbee CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083884 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN426425) |
| ANTHONY BISBEE, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Kelly Mok, Judge.  Affirmed as modified.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Genevieve Herbert, Deputy Attorneys General, for Plaintiff and Respondent.

Anthony Bisbee appeals from a judgment after a jury found him guilty of two counts of lewd or lascivious act by force or fear on a child under the age of 14 (Pen. Code,[1] § 288, subd. (b)(1)) (count 1 [victim K.K.]) (count 2 [victim L.K.].)[2] With respect to both counts, the jury found true special allegations under the One Strike law (§ 667.61)[3] that Bisbee committed an offense against more than one victim within the meaning of section 667.61, subdivisions (b), (c), and (e). In addition, also with respect to both counts, the jury found that Bisbee engaged in substantial sexual conduct with the victim within the meaning of section 1203.066, subdivision (a)(8). The trial court imposed an aggregate sentence of 30 years to life under the One Strike law, consisting of a sentence of 15 years to life on count 1 and a consecutive sentence of 15 years to life on count 2.

On appeal, Bisbee raises a single claim, namely that there is insufficient evidence of his use of "force, violence, duress, menace, or fear" to support the jury's verdict on count 2. (§ 288, subd. (b)(1).) We agree. We further conclude that the appropriate disposition is to modify the judgment on count 2 to reflect a conviction of the lesser included offense of lewd or lascivious act on a child under the age of 14 years (§ 288, subd. (a)). However, because this modification would not afford the trial court with

---

[1]    All further statutory references are to the Penal Code.

[2]    K.K. and L.K. are not related.

[3]    The One Strike law "is an alternative sentencing scheme that applies when the prosecution pleads and proves specific aggravating circumstances in connection with certain sex offenses." (*In re Vaquera* (2024) 15 Cal.5th 706, 712.)

discretion to impose a sentence of other than 30 years to life, no remand is required. Accordingly, we affirm the judgment as so modified.[4]

FACTUAL BACKGROUND

A. *Count 1 (victim K.K.)*[5]

K.K. was born in 2015. K.K. would frequently spend time with family members who lived on the same property as did Bisbee. In July 2020, K.K. told her parents that Bisbee had showed her his "pee pee." During follow-up questioning by her mother, K.K. said that Bisbee had taken her hand and attempted to have her touch his penis.

A social worker conducted a forensic interview of K.K. that same month. During the interview, a recording of which was played for the jury, K.K. stated that Bisbee asked her if she wanted to touch his penis. When she refused, Bisbee "just threw [her] hand on it." K.K. explained that Bisbee "pulled [her] arm" and that this hurt her. K.K. further stated that she pulled her hand away before "goo" came out of Bisbee's penis.

During the investigation pertaining to Bisbee's sexual misconduct involving K.K., police learned of a prior case involving Bisbee stemming from an incident that had occurred in the 1990s. That incident eventually became the basis of count 2.

B. *Count 2 (victim L.K.)*

L.K. was born in 1992, and her sister, H.K., was born in 1989. Bisbee began dating their mother, J.K., in 1994, and the two married in August 1995. Before the marriage, there were occasions when J.K. left her daughters

---

[4] While this appeal was pending, at our request, the parties submitted supplemental briefing concerning the appropriate disposition of the appeal were we to conclude that Bisbee's sufficiency claim was meritorious.

[5] We provide an abbreviated summary of the facts pertaining to count 1 given that Bisbee raises no challenge to his conviction on this count.

alone with Bisbee. After the marriage, the family moved in together and Bisbee watched the girls more frequently. Beginning in February 1996, J.K. and Bisbee began to have marital difficulties. By July of 1996, Bisbee moved out of the family home.

On July 2, 1996, L.K. told J.K. that Bisbee had shown her his penis. J.K. reported the disclosure to the police, and a formal investigation ensued. As part of the investigation, H.K. and L.K. underwent forensic interviews, recordings of which were also played for the jury.

During L.K.'s interview, L.K. stated that Bisbee, whom she occasionally referred to as her "dad," had showed her his "pointy thing." L.K. added that this was why "he can't live with us." When asked whether Bisbee had asked her to "touch the pointy thing," L.K. responded in the affirmative. L.K., however, denied touching Bisbee's penis. H.K. did not disclose any sexual misconduct.

Bisbee was not prosecuted for the incident involving L.K. until charges were filed in this case many years later. At the October 2023 trial, H.K. testified that on one occasion, when she was six or seven and L.K. was three or four, she and her sister were alone with Bisbee in the kitchen.[6] The girls were playing with a cardboard box. Bisbee, who was not wearing a shirt, asked H.K. and L.K. if they would like to see a magic trick. After the girls responded affirmatively, Bisbee "pulled out his penis and told [the girls] if [they] touched it, that it would grow." H.K. explained that she remembered L.K. being "excited" and that she recalled "kind of being excited with [L.K.]" L.K. touched Bisbee's penis and he became erect. Bisbee told L.K. that if "she

---

[6] H.K. could not recall whether the kitchen was in a house in which Bisbee lived before the family moved in together, or in the house in which they all lived after the marriage.

4

touched it more that it would continue to grow." While this was happening, H.K. was "just sitting in the box watching." H.K. recalled that L.K. was "laughing and giggling." Bisbee then took L.K. into a room and closed the door. H.K. explained that "later, [L.K.] came out still just excited that a magic trick had happened."

H.K. also testified that she remembered Bisbee taking L.K. into a room "for periods of time" on three or four other occasions. According to H.K. on these other occasions, Bisbee would tell H.K. not to "tell [her] mom or anyone" or else "[she] wouldn't see [her] mom or sister again."

During H.K.'s forensic interview, H.K. stated that both her mother and Bisbee had spanked L.K. H.K. stated that her mom spanked L.K. when L.K. would scream at their mother and that Bisbee did so when L.K. was "just crying." There was no evidence that Bisbee had spanked L.K. or H.K. in connection with any sexual acts.

At trial, after explaining that she was less than five years old during the period in question (1995 to 1996), L.K. testified that she did not recall much about Bisbee. L.K. did, however, remember an incident during which the two of them were alone together in one of two living rooms in their family home when Bisbee asked her to touch his penis. L.K. recalled "reaching out," but she could not remember whether she had touched Bisbee's penis.

## DISCUSSION

A.   *There is insufficient evidence of Bisbee's use of "force, violence, duress, menace, or fear" (§ 288, subd. (b)(1)) to support the jury's verdict on count 2*

Bisbee claims there is insufficient evidence of his use of "force, violence, duress, menace, or fear" to support the jury's verdict on count 2. (§ 288, subd. (b)(1).)

5

In reviewing a challenge to the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

"Section 288[, subdivision] (a) prohibits the commission of a lewd or lascivious act on a child under age 14 done with the intent to arouse or satisfy the sexual desires of the perpetrator or the child. Section 288[, subdivision] (b)(1) further prohibits the commission of such an act 'by use of force, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person. . . .' " (*People v. Soto* (2011) 51 Cal.4th 229, 237, italics added (*Soto*).)[7]

---

[7] Section 288 provides in relevant part:
"(a) . . . [A] person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.
"(b)(1) A person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for 5, 8, or 10 years."

The People argue we "should affirm the judgment because there was substantial evidence of *duress* to support appellant's conviction."[8] (Italics added.) Accordingly, we consider whether there is sufficient evidence of "duress" in the record to support the jury's verdict on count 2 finding Bisbee guilty of violating section 288, subdivision (b)(1).

" '[D]uress,' as used in section 288[, subdivision] (b)(1), means ' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*Soto, supra*, 51 Cal.4th at p. 246, italics omitted.) Further, "[b]ecause duress is measured by a purely objective standard," and "[c]onsistent with the language of section 288 and the clear intent of the Legislature, the focus must be on the defendant's wrongful act, not the victim's response to it." (*Soto*, at p. 246; see also *id.* at p. 246, fn. 9 [directing that former CALCRIM No. 1111 be amended to make this point clear]; see CALCRIM No. 1111 [incorporating amendments directed by the *Soto* court].)[9]

Duress is a form of "psychological coercion." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*).) For example, "[a] threat to a child of

---

8    Our review of the record reveals that there is no evidence that Bisbee committed the offense charged in count 2 by any of the other methods identified in section 288, subdivision (b)(1), namely, by "force, violence, . . . menace, or fear of immediate and unlawful bodily injury on the victim or another person." The People do not contend otherwise.

9    The trial court instructed the jury with CALCRIM No. 1111 in relevant part as follows: " 'Duress' means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do or submit to something that he or she would not otherwise do or submit to. [¶] When deciding whether the act was accomplished by duress,

7

adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent." (*Ibid.*)

"In determining whether a sexual offense was accomplished by duress, the trier of fact must consider the totality of the circumstances, including the victim's age and relationship to the defendant." (*People v. Martinez* (2024) 105 Cal.App.5th 178, 189.) "The totality of the circumstances includes the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072 (*Thomas*).) With respect to a victim's "relationship to the perpetrator" (*ibid.*), evidence that the defendant is an "authority figure" to the victim is among the circumstances a jury may consider in determining whether duress is present. (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.)

In this case, it is undisputed that the sole conduct forming the basis of count 2 arose from the "magic trick" incident described above. The jury could have reasonably inferred that L.K.'s young age and physical size at the time of the incident as well as her relationship to Bisbee, including that he acted in a parental role and had spanked her in the past, would have rendered her "particularly *susceptible* to being coerced." (*Thomas, supra*, 15 Cal.App.5th at p. 1073.) However, we see no evidence in the record on which the jury could have reasonably found such coercion *actually* present. For example, there is

---

consider all the circumstances, including the age of the child and her relationship to the defendant."

no evidence that Bisbee physically restrained or controlled L.K. during the incident, nor any evidence Bisbee directly or implicitly threatened L.K. with adverse consequences were she not to engage in the sexual conduct.

The People's primary argument on appeal is that the manner by which Bisbee obtained L.K.'s compliance to engage in the sexual act forming the basis of count 2 amounted to duress. While the People forthrightly acknowledge that "the promise of seeing your father figure perform a magic trick might not carry the underlying menace found in many cases of duress," they argue that such conduct "nonetheless put L.K. in the position of both disappointing [Bisbee] and missing an opportunity to partake in something magical with him if she were to decline his invitation to participate." The People further contend that it was reasonable to infer that L.K. "viewed both of these circumstances as hardships and thus engaged in the 'magic trick' to avoid them." We are not persuaded.

To begin with, there is nothing in the record to support the People's speculation that L.K. was concerned with "disappointing [Bisbee]."[10] Moreover, no authority supports the proposition that a victim's concern over "missing an opportunity" to engage in an activity may reasonably be considered by a jury as evidence of a defendant's use of duress. To adopt this "missed-opportunity" line of reasoning would be to allow for nearly *any* conduct to be characterized as the use of duress, contrary to the requirement

---

[10] At trial, the prosecutor urged the jury to engage in a different form of speculation to find the duress element of section 288, subdivision (b) satisfied. In his closing argument, the prosecutor argued that, because Bisbee had "threaten[ed]" H.K., the jury could infer "he was doing the same thing to [L.K.]." On appeal, the People properly abandon this theory. Evidence that Bisbee had told *H.K.* that if she were to disclose his conduct that she "wouldn't see [her] mom or sister again," does not amount to substantial evidence that he made similar statements to *L.K.*

9

that the defendant use "a direct or implied threat of force, violence, danger, hardship or retribution," to accomplish a violation of section 288, subdivision (b)(1). (*Soto, supra*, 51 Cal.4th at p. 246, italics omitted.) Relatedly, while we agree with the People that there is evidence that Bisbee used "deception" in the form of a "ruse" to accomplish the sexual misconduct, trickery is distinct from duress.

Nor are we persuaded by the People's repeated suggestion in their brief that Bisbee's "isolation" of L.K. constituted evidence of his use of duress. H.K. testified that the misconduct took place in the kitchen of a home while H.K. was present. The mere fact that Bisbee committed the sexual misconduct while no other adults were present does not support a finding of duress.

Finally, the cases in which reviewing courts have upheld findings of duress on which the People rely are plainly distinguishable. In *People v. Pitmon* (1985) 170 Cal.App.3d 38, the defendant "displayed a use of physical force that was not necessary for the commission of the lewd acts," including "restrain[ing] [the victim] when he tried to escape." (*Id*. at pp. 48, 51.) No evidence of such use of physical force was present here.

In *Cochran, supra*, 103 Cal.App.4th 8, on which the People rely most heavily, the defendant told the victim, his daughter, "not to tell anyone [about the molestations] because he would get in trouble and could go to jail." (*Id*. at p. 15.) Moreover, in *Cochran*, the molestations were videotaped, and court noted that the video revealed the victim was "reluctant" to engage in the sexual conduct and that she complained the molestations were hurting her. (*Ibid*.) Unlike in *Cochran*, there was no evidence that Bisbee told L.K. that "revealing the molestation would result in jeopardizing the family"

10

(*Thomas, supra*, 15 Cal.App.5th at p. 1072) and there was no video evidence from which the jury might have been able to infer Bisbee's use of duress.

In sum, we conclude the record lacks substantial evidence that Bisbee "use[d] . . . force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" to commit the lewd and lascivious act charged in count 2.  (*Soto, supra*, 51 Cal.4th at p. 237.)

B.     *The proper disposition*

As noted, we solicited supplemental briefing from the parties pertaining to the appropriate disposition of the appeal were we to conclude that there was insufficient evidence to support the jury's verdict on count 2 finding Bisbee guilty of lewd or lascivious act by force or fear on a child under the age of 14 years (§ 288, subd. (b)(1)).  The People argue that such a conclusion would have no effect on Bisbee's overall sentence of 30 years to life in prison.  They contend that this is so because the appropriate disposition is to modify the judgment on count 2 to reflect a conviction of the lesser included offense of lewd or lascivious act on a child under the age of 14 years (§ 288, subd. (a)) and to modify the judgment to provide for a sentence of 15 years to life on count 2 and a consecutive sentence of 15 years to life on count 1.[11]  Bisbee argues that we should reverse the judgment on count 2 and direct the trial court to dismiss that count on statute of limitations or ex post facto grounds.  We agree with the People.

_____

[11]     While the trial court imposed an aggregate sentence of 30 years to life, the People argue that after reducing the conviction on count 2, we should reverse the order of the sentences to make the 15 years to life sentence on count 1 consecutive to the 15 years to life sentence on count 2, rather than vice versa.

11

It has long been "recognized that under . . . sections 1181, subdivision 6, and 1260,[12] an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense." (*People v. Navarro* (2007) 40 Cal.4th 668, 671, fn. omitted.) For example, where there is insufficient evidence of force or fear to support a conviction of committing a violation of section 288, subdivision (b), a reviewing court may reduce the conviction to the lesser included offense of committing a violation of section 288, subdivision (a). (See, e.g., *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1322; *People v. Hecker* (1990) 219 Cal.App.3d 1238, 1249–1251.) Bisbee does not contend otherwise in his supplemental brief.

Bisbee also does not dispute that a defendant who suffers a conviction "in the present case or cases" of a violation of section 288, subdivision (a) *or* (b) "against more than one victim" is subject to a mandatory state imprisonment for 15 years to life. (See § 667.61, subds. (b) [specifying 15 years to life], (c)(4) [listing § 288, subd. (b)], (c)(8) [listing § 288, subd. (a)],

---

[12] Section 1181, subdivision (6) provides: "When the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed."

Section 1260 provides that a reviewing court "may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

(e)(4) [describing multiple victim circumstance].) However, he argues that it would be inappropriate to modify the judgment in this case to reflect a conviction for the lesser included offense of committing a lewd or lascivious act with a minor under the age of 14 (§ 288, subd. (a)) because prosecution of such a crime is barred by the statute of limitations. We are not persuaded.

Section 799, subdivision (a) provides in relevant part, "(a) Prosecution for an offense punishable by . . . imprisonment in the state prison for life . . . may be commenced at any time." A conviction for committing a lewd or lascivious act with a minor under the age of 14 (§ 288, subd. (a)) with a multiple-victim One Stike law finding (§ 667.61, subds. (b), (c)(8), (e)(4)) is punishable by a life sentence. (See § 667.61, subd. (b) ["a person who is convicted of an offense specified in subdivision (c) [including section 288, subdivision (a) as specified in section 667.61, subdivision (c)(8)] under one of the circumstances specified in subdivision (e) [including the multiple victim circumstance in section 667.61, subdivision (e)(4)] shall be punished by imprisonment in the state prison for 15 years to life"].)[13] Thus, modification of Bisbee's conviction to a violation of section 288, subdivision (a) on count 2 would not present a statute of limitations issue, since Bisbee was prosecuted for an offense punishable by "imprisonment in the state prison for life" under the One Strike law and such prosecution was permissible "at any time." (§ 799, subd. (a).)

Bisbee resists this conclusion by arguing that section 799, subdivision (a) does not apply because the "act triggering the One Strike alternative punishment" — his commission of sexual misconduct on L.K. — may have

---

[13] Although not alleged in this case, under 667.61, subdivision (j)(2), the punishment for "an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e), upon a victim who is a child under 14 years of age," is imprisonment in the state prison for 25 years to life.

occurred prior to 1996, and the prosecution of "acts occurring prior to January 1, 1996 are barred by the statute of limitations." We need not detail Bisbee's theory of why a prosecution for an act occurring prior to January 1, 1996 is purportedly barred by the statute of limitations, because his prosecution for a life offense under the One Strike law is permissible under section 799, subdivision (a). (See *People v. Perez* (2010) 182 Cal.App.4th 231, 241 (*Perez*) [rejecting argument that statute prescribing limitation period for underlying sex offense applied where defendant was charged with offense carrying life sentence under the One Strike law based on multiple victim circumstance].) As the *Perez* court explained, "determining whether an offense is punishable by life imprisonment must take into account an alternative sentencing scheme that applies to the offense based on other criminal conduct that the trier of fact has found to have occurred." (*Id.* at p. 237.) We agree. Whether prosecuted for a violation of section 288, subdivision (a) or (b), *given the One Stike multiple-victim allegation*, Bisbee's prosecution was not barred by the statute of limitations.[14] Thus, the statute of limitations poses no barrier to modifying the judgment to reflect a conviction for a violation of section 288, subdivision (a) on count 2.

Bisbee does not suggest there is any language in the One Strike law precluding prosecution for a qualifying offense that would otherwise have been barred by the statute of limitations if prosecuted individually without a One Strike multiple-victim allegation. *Perez* expressly held that such a One Strike prosecution was permissible. (*Perez, supra*, 182 Cal.App.4th at pp. 236–242.) Bisbee also does not dispute that both the One Strike law and

---

14    At the time he committed the sexual misconduct against L.K., California law provided that a "[p]rosecution for an offense punishable by . . . imprisonment in the state prison for life . . . may be commenced at any time." (Former § 799; Stats. 1994, ch. 409, § 1.)

section 799 were already on the books when he committed count 2.  Under the holding of *Perez*, therefore, nothing in the statutory scheme bars application of the One Strike sentencing scheme to a qualifying offense that would have been time-barred if prosecuted individually without a One Strike multiple-victim allegation—as long as the offense occurred after the One Strike law went into effect.  (*Perez*, at pp. 236–242.)  Bisbee cites no contrary authority.  His reliance on *People v. Turner* (2005) 134 Cal.App.4th 1591 is unpersuasive because it involved the Three Strikes law and *Perez* explained why *Turner* "should be narrowly construed to apply only to the antirecidivist Three Strikes law, and not to the One Strike law, which punishes, as relevant here, not recidivism but the commission of sexual offenses against more than one victim."  (*Perez*, at p. 241; see also *Anthony v. Superior Court* (2010) 188 Cal.App.4th 700, 716–718 [holding *Turner*'s analysis was limited to the Three Strikes law and following *Perez*].)

Bisbee appears to contend that we may not modify the judgment on count 2 to reflect a conviction for a violation of section 288, subdivision (a) due to ex post facto principles.[15]  "A statute violates the prohibition against ex post facto laws if it . . . increases the punishment for a crime after it is committed."  (*People v. White* (2017) 2 Cal.5th 349, 360.)

Bisbee suggests that he could not be prosecuted for a violation of section 288, subdivision (a) on count 2 because, prior to 2006, the One Strike law did not apply to violations of section 288, subdivision (a) where a defendant was eligible for probation, and, according to Bisbee, he "was

---

[15]    We consider here that section of Bisbee's supplemental brief entitled, "Under Ex Post Facto Principles Count 2 Does Not Qualify as a Multiple Victim Circumstance."

15

eligible for probation under the provisions of section 1203.066, subdivision (c), that existed in 1995 and 1996."

As initially enacted in 1994, the One Strike law applied to "[a] violation of subdivision (a) of Section 288, *unless the defendant qualifies for probation under subdivision (c) of Section 1203.066.*" (Stats. 1993-1994, 1st Ex. Sess., ch. 14X, § 1, p. 8570, italics added.) On September 20, 2006, the One Strike law was amended to remove this exception. (Stats. 2006, ch. 337, § 33.)

In 1995 and 1996, former section 1203.066, subdivision (a)(8) provided that probation "shall not be granted to" certain persons including, " [a] person who, in violating Section 288 . . . has substantial sexual conduct with a victim who is under the age of 11 years." (Former § 1203.066, subd. (a)(8); Stats. 1993-1994, 1st Ex. Sess., ch. 60X, § 3, p. 8805.) But during that period, subdivision (c) of former section 1203.066 created an exception to this prohibition, which allowed probation under certain circumstances where the defendant was a relative, stepparent, or member of the same household as the victim and the court made a number of required findings, including that "[a] grant of probation to the defendant [wa]s in the best interest of the child." (Stats. 1993-1994, 1st Ex. Sess., ch. 60X, § 3, p. 8805; see also Stats. 1995, ch. 48, § 2, p. 123; Stats. 1995, ch. 935, § 4, p. 7094.)

Bisbee apparently contends that (1) if count 2 is reduced to a violation of section 288, subdivision (a), then he qualified for probation under this exception when he committed the sexual offense against L.K. in 1995 or 1996; (2) the One Strike law therefore would not have applied to this offense at the time it was committed; and (3) it would violate ex post facto principles to apply the current version of the One Strike law to this offense retroactively.

It is unclear whether Bisbee's prosecution for a violation of section 288, subdivision (a) on count 2 under the current One Strike law would violate ex

16

post facto principles, even assuming Bisbee would have qualified for probation as the law existed in 1995 and 1996.  In *People v. Grant* (1999) 20 Cal.4th 150 (*Grant*), our Supreme Court considered whether a conviction for continuous sexual abuse of a child (§ 288.5) was prohibited by ex post facto principles when the conviction was based on conduct that began before the enactment of the statute at issue but continued after its effective date.  (*Id.* at p. 153.)  The *Grant* court concluded that such a conviction was permissible, explaining: "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date. [Citations.]  Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date." (*Id.* at p. 157.)

As the *Grant* court explained, it does not violate ex post facto principles to sentence a defendant under a statutory amendment increasing the punishment associated with a crime based on conduct that occurred before, but continued after, the amendment's effective date.  (*Grant, supra*, 20 Cal.4th at pp. 157–158.)  Here, the conduct completing Bisbee's multiple victim One Strike exposure on count 2 arose in July 2020 when he committed the sexual misconduct against K.K., not in the 1990s when he committed the sexual misconduct against L.K.  Because Bisbee committed the conduct completing his One Strike law exposure on count 2 at a time when that law undisputedly applied to violations of section 288, subdivision (a) without qualification, Bisbee's One Strike prosecution in count 2 for a violation of section 288, subdivision (a) arguably would not be barred by ex post facto principles.

17

On the other hand, this case may be distinguishable from *Grant* because it involves an alternative sentencing scheme, rather than a continuous crime. In *People v. Alvarez* (2002) 100 Cal.App.4th 1170, the defendant was convicted of sexual offenses against two minors. The offenses committed against one minor (Dolores) were committed before the 1994 enactment of the One Strike law, but those committed against the other minor were committed after its enactment. The jury found true a One Strike multiple victim allegation, and the court sentenced the defendant to consecutive One Strike sentences of 15 years to life for each of the two victims. (*Id*. at pp. 1173–1174.) On appeal, however, the Court of Appeal agreed with the defendant that "because the one strike law was adopted after his sexual abuse of Dolores had occurred, applying it to the charges for that conduct violates the state and federal constitutional protections against ex post facto laws." (*Id*. at p. 1178.)

Under the reasoning of *Alvarez*, it would arguably violate ex post facto principles to impose a One Strike sentence against Bisbee on count 2 if it would not have been a qualifying One Strike offense under the law in effect when he committed it, even though the last act necessary to trigger the multiple victim allegation occurred in 2020 when count 2 would have been a qualifying One Strike offense even if reduced to a violation of section 288, subdivision (a).

We need not resolve this question, however, because even assuming the One Strike law in effect at the time of Bisbee's commission of the underlying offense against L.K. must be applied, Bisbee has not demonstrated that his commission of a section 288, subdivision (a) offense against L.K. would not have been a qualifying One Strike offense under that earlier law. As noted above, upon its enactment in 1994, the One Strike law applied to violations of

18

section 288, subdivision (a) in cases in which the defendant had substantial sexual conduct with a victim who was under the age of 11 years,[16] "unless the defendant qualifies for probation under subdivision (c) of Section 1203.066." (Stats. 1993-1994, 1st Ex. Sess., ch. 14X, § 1, p. 8570.) While, as described above, under former section 1203.066, subdivision (c) it was possible for a court to grant probation where the defendant was a relative of the victim and the court made certain required findings, including that "[a] grant of probation to the defendant [wa]s in the best interest of the child," (Stats. 1993-1994, 1st Ex. Sess., ch. 60X, § 3, p. 8805; see also Stats. 1995, ch. 48, § 2, p. 123; Stats. 1995, ch. 935, § 4, p. 7094), Bisbee has not attempted to demonstrate that a court could have made the necessary findings to qualify him for probation under former section 1203.066, subdivision (c).[17] Indeed, as the People correctly note, this court has held that "under former section 1203.066, subdivision (c) a sentencing court has no authority to grant probation to a defendant against whom a true finding under section 1203.066, subdivision (a)(8) has been properly made in a case in which the molestation victim is no longer a child at the time of

_____

[16] Bisbee does not raise any argument pertaining to the jury's finding that he engaged in substantial sexual conduct with L.K. within the meaning of section 1203.066, subdivision (a)(8). Further, as noted above, L.K. was born in 1992, and thus it is undisputed that she was under the age of 11 years when Bisbee committed the acts forming the basis of count 2 against her.

[17] The other findings the trial court would have had to make for Bisbee to qualify for probation under former 1203.066, subdivision (c) would have been that rehabilitation was feasible and he was placed in a recognized treatment program designed to deal with child molestation; that he was removed from the household of the victim until the court determined that her best interests would be served by returning him to the household; and that there was no threat of physical harm to the child victim if probation was granted. (Stats. 1993-1994, 1st Ex.Sess., ch. 60X, § 3, pp. 8805-8806; see also Stats. 1995, ch. 48, § 2, p. 123; Stats. 1995, ch. 935, § 4, p. 7094.)

sentencing." (*People v. Wills* (2008) 160 Cal.App.4th 728, 732.) Here, it is undisputed that L.K., born in 1992, was not a child at the time of Bisbee's sentencing in 2024.

Bisbee therefore has not established that he would have "qualifie[d] for probation under subdivision (c) of Section 1203.066," under the One Strike law in effect in 1994. (Stats. 1993-1994, 1st Ex. Sess., ch. 14X, § 1, p. 8570.) Accordingly, we conclude that Bisbee has not demonstrated that modification of the judgment to reflect a conviction under section 288, subdivision (a) and a sentence of 15 years to life under the multiple-victim provision of the One Strike law would result in any ex post facto violation.

Finally, reduction of Bisbee's conviction on count 2 to a violation of section 288, subdivision (a) means that count is no longer subject to the mandatory consecutive sentence provision of section 667.61, subdivision (i). (See § 667.61, subds. (i) ["*For any offense specified in paragraphs (1) to (7), inclusive, of subdivision (c)* . . . the court shall impose a consecutive sentence for each offense that results in a conviction under this section if the crimes involve separate victims"], (c)(8) [listing § 288, subd. (a)].) However, Bisbee's unchallenged conviction on count 1 for a violation of section 288, subdivision (b) does remain subject to the mandatory consecutive sentencing provision of section 667.61, subdivision (i). (See § 667.61, subds. (i), (c)(4) [listing § 288, subd. (b)].) Thus, as the People correctly contend, Bisbee remains subject to aggregate sentence of 30 years to life, consisting of a sentence of 15 years to life on count 2, and a consecutive sentence of 15 years to life on count 1.

Accordingly, we conclude that we may properly modify the judgment on count 2 to reflect a conviction of section 288, subdivision (a).[18]

---

[18] In his supplemental brief, Bisbee briefly asserts, for the first time, that retrial of count 2 is required to permit him to litigate the issue of whether he

DISPOSITION

The judgment is modified to reflect a conviction on count 2 of the lesser included offense of lewd or lascivious act on a child under the age of 14 years (§ 288, subd. (a)). The judgment is further modified to reflect a sentence of 15 years to life on count 2 and a consecutive sentence of 15 years to life on count 1. The trial court is ordered to prepare an amended abstract of judgment reflecting these modifications and to forward a copy of this abstract to the Department of Corrections and Rehabilitation. As so modified, Bisbee's aggregate sentence of 30 years to life is affirmed.

BUCHANAN, J.

WE CONCUR:

DO, Acting P. J.

CASTILLO, J.

suffered a denial of due process due to preaccusation delay. The claim is forfeited because it was not raised in the trial court. (See, e.g., *People v. Cardona* (2009) 177 Cal.App.4th 516, 523 ["We further conclude appellant forfeited any due process claim by failing . . . to raise it . . . in the trial court"]; see also *People v. Wilson* (1963) 60 Cal.2d 139, 148 [speedy trial claims forfeited if not timely asserted].)